UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CLAUDIA MENARD,<br><br>    Plaintiff,<br><br>    vs.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of the Social Security,<br><br>    Defendant | Case No.: EDCV 08-1109 AJW<br><br>MEMORANDUM OF DECISION |

Plaintiff filed this action seeking reversal of the decision of the defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for supplemental security ("SSI") benefits.  The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

Plaintiff filed an application for SSI benefits on January 14, 2005, alleging that she had been disabled since November 1, 2004 due to blindness in her right eye, brain damage, problems with her right cavity eye socket, and hepatitis "C" infection. [JS 2; Administrative

Record ("AR") 11, 94, 136]. Plaintiff's application was denied initially and upon reconsideration. [JS 2; AR 11]. Plaintiff requested an administrative hearing, which was conducted before an Administrative Law Judge (the "ALJ") on March 12, 2008. [AR 11, 773-789]. Plaintiff, who was represented by an attorney, testified on her own behalf. [AR 11, 773-789]. Testimony also was received from two medical experts, Arnold Ostrow, M.D., and Stephen Wells, Ph.D., and a vocational expert, Kelly Winn-Boaitey. [AR 11, 773-789].

On May 12, 2008, the ALJ issued a written decision denying plaintiff's application for benefits. [AR 8-21]. The ALJ found that plaintiff had the following severe impairments: status post self- inflicted gunshot wound to the right orbit with a residual prosthetic right eye; alcoholism; hepatitis "C"; and cervical degenerative disk disease at the C3-4 and C5-6 levels. [AR 13]. The ALJ determined that plaintiff's alcoholism met section 12.09 of the Listing of Impairments (the "Listing"). See 20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ further found, however, that absent alcohol or drug abuse, plaintiff's impairments did not meet or equal a listed impairment. [AR 13-14].

The ALJ determined that absent alcohol or drug abuse, plaintiff retained the residual functional capacity ("RFC") to perform light work with the following nonexertional limitations: no raising of her arms above shoulder height; no turning of her head to the extreme lateral right and left or back and forth; no more than occasional bending, stooping, and stair climbing; no climbing of ropes, ladders, or scaffolds; and no work requiring binocular vision or unprotected exposure to heights. [AR 14]. The ALJ found that plaintiff's RFC precluded her from performing her past relevant work as a home care worker, but that her RFC did not preclude her from performing alternative jobs that exist in significant numbers in the national economy. [AR 20]. The ALJ therefore concluded that plaintiff was not disabled at any time through the date of his decision. The Appeals Council denied plaintiff's request for review. [AR 4-6].

**Background**

Plaintiff was born in September 16, 1955, and she was 53 years old when the ALJ issued his decision. [AR 19]. Plaintiff had a high school education and past relevant work as a home care worker. [AR 19].

On November 11, 2004, plaintiff was admitted to the emergency room at John Muir Medical Center with a self-inflicted gunshot wound to the head, ruptured globe on the right eye, and cerebral contusion. [AR 160-219, 566-772]. She also presented with alcohol intoxication; her blood alcohol level was 0.38. [AR 179, 182]. Plaintiff underwent surgical repair of the right globe, followed by right eye enucleation with orbital implant. [AR 160-161].

During her hospital stay, plaintiff underwent a psychiatric evaluation and was diagnosed with major depression and suicide attempt. [AR 161]. On November 23, 2004, plaintiff was transferred to an inpatient psychiatry unit, where she remained until discharged on December 9, 2004 with diagnoses of major depression without psychosis, alcohol abuse, post self-inflicted gunshot wound to the head with enucleated right eye and right orbital fracture, hepatitis C, and gastroenteritis. [AR 210-219]. On discharge, plaintiff was prescribed medication for depression, sleep, itching, and nausea, and she also was prescribed Antabuse, a medication used to treat alcoholism. [AR 214].

Plaintiff received follow-up ophthalmic, medical, and psychiatric treatment from Contra Costa Health Services ("CCHS").[1] [AR 278-349, 360-376]. On May 25, 2006, Dr. Puell, a CCHS family practice doctor [AR 368-369], completed a physical functional capacity

---

[1] Treatment notes in the record indicate that plaintiff received care from a number of CCHS facilities, including the Richmond Health Center, the Contra Costa Regional Medical Center, the Martinez Health Center, and the Mental Health Division. Those facilities are referred to collectively as "CCHS."

assessment form rating plaintiff's ability to do work-related activities on a day-to-day basis in a regular work setting. [AR 365]. Dr. Puell opined that plaintiff could occasionally lift and/or carry no more than ten pounds, stand and/or walk for two hours without interruption in an eight-hour workday, and sit for four hours without interruption in an eight-hour workday. [AR 365-366]. Dr. Puell opined that plaintiff could never climb, balance, stoop, crouch, kneel and crawl, and that while her reaching, handling, feeling, hearing and speaking were all "affected by" her impairments, her ability to push, pull, and see were not. [AR 366]. Additionally, Dr. Puell stated that heights, moving machinery, temperature extremes, chemicals, dust, noise, fumes, humidity and vibration were environmental restrictions that were "affected by" her impairment. [AR 367]. Dr. Puell said that plaintiff's low back pain, asthma, allergies, and blindness in her right eye supported his assessment. [AR 365-367]. Dr. Puell stated that plaintiff had a history of the following impairments: chronic hepatitis C, hypertension, low back pain and degenerative joint disease, asthma, allergies, and irritable bowel. He said that her history of those disorders caused fatigue, body aches, depression, pain, range of motion limitations, shortness of breath, and coughing. [AR 368].

A few months later, on October 18, 2006, Dr. Puell completed a medical assessment of plaintiff's mental ability to do work-related activities. [AR 262-264]. The assessment form consisted of a checklist asking Dr. Puell to rate plaintiff's abilities as unlimited, very good, good, fair, poor, or none. [AR 362-364]. Dr. Puell indicated that plaintiff had poor or no ability to: relate to co-workers; deal with the public; interact with supervisors; deal with work stresses; maintain attention and concentration; understand, remember and carry out complex job instructions; understand, remember and carry out detailed, but not complex instructions; understand, remember and carry out simple job instructions; behave in an emotionally stable manner; relate predictably in social situations; and demonstrate reliability. [AR 17, 362-364]. Dr. Puell also determined that plaintiff had fair ability to follow work rules, use judgment,

function independently, and maintain personal appearance. [AR 362, 364]. Asked to describe her limitations and the medical or clinical findings that supported his assessment, Dr. Puell responded that plaintiff had "chronic health/mental issues," poor concentration and motivation, insomnia, depression, had up and down days, took medications that caused sedation, had a history of chronic hepatitis C causing symptoms of fatigue, liver problems, and body aches, and a history of asthma causing shortness of breath, coughing, and wheezing. [AR 363]. Dr. Puell observed that plaintiff was unable to take charge, follow directions, get organized, and get motivated to seek or keep employment. [AR 363]. He said that plaintiff had poor vision and was "unable to relate to societal demands." [AR 364]. Dr. Puell stated that weather, moisture, temperature changes, air conditioning or a furnace could cause wheezing. [AR 364]. Dr. Puell opined that plaintiff was permanently disabled. [AR 364].

During the hearing, the medical expert, Dr. Ostrow, testified that plaintiff had medically determinable impairments consisting of status post-gunshot wound to the right orbit, alcoholism, major depression, hepatitis C, and cervical degenerative disease at C3/4 and C5/6. [AR 776]. Dr. Ostrow testified that plaintiff's impairments, singly or in combination, did not meet or equal a listed impairment. [AR 777]. Asked by the ALJ to describe plaintiff's RFC, Dr. Ostrow testified as follows. Plaintiff could sit for four hours at a time and six hours total in an eight-hour day. She could stand for two hours at a time and four hours total in an eight-hour day. She could walk for three hours at a time and four hours total in an eight-hour day. Plaintiff could lift twenty pounds occasionally and fifteen pounds repetitively. She could carry fifteen pounds occasionally and ten pounds continuously. Plaintiff was totally precluded from working at unprotected heights and from performing any work requiring binocular vision. [AR 777-778]. Dr. Ostrow opined that plaintiff's alcoholism was not material to her hepatitis, that is, her hepatitis diagnosis would persist even if she stopped abusing alcohol. [AR 778].

The psychological expert, Dr. Wells, testified that plaintiff had major depressive disorder, recurring, severe, with psychotic features, and mixed personality disorder with borderline, histrionic, and narcissistic features. [AR 78-781]. Dr. Wells opined that plaintiff's affective and personality disorders, in combination with her alcoholism and physical impairments, equaled a listing-level impairment, but that alcoholism was a material factor contributing to her disability. [AR 781-784].

The vocational expert testified that plaintiff had past relevant at the medium, unskilled level as a home attendant and home care provider, Dictionary of Occupational Titles ("DOT") job number 354-377.014. [AR 787]. She further testified that the exertional level described by Dr. Ostrow in his hearing testimony constituted light work. The ALJ then asked the vocational expert to add to those restrictions "no lifting above shoulder height; no turning of the head to the right or left on a frequent basis; no back and forth head movements; no unprotected heights, ladders, ropes and scaffolds; [and] only monocular vision," and on that basis to opine whether plaintiff would be able to do other work. [AR 788]. The vocational expert testified that with the restrictions identified by the ALJ, plaintiff would be able to perform the light, unskilled jobs of cashier II, DOT job number 211.462-010, of which there were 144,000 jobs nationally and 1,480 locally; and office helper, DOT job number 239.567-010, of which there were 166,000 jobs nationally and 1,900 locally. [AR 788]. The vocational expert testified that if, in addition to those restrictions, plaintiff was unable to perform even simple, repetitive work for about half of the work day, there would be no alternative jobs that plaintiff could perform. [AR 788].

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r Social Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).

"Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)).

**Statement of Disputed Issues**

The disputed issues are: (1) whether the ALJ properly considered Dr. Puell's assessment of plaintiff's mental and physical limitations; and (2) whether the ALJ posed a complete hypothetical question to the vocational expert. [JS 2-3].

**Discussion**

**Substance abuse as a contributing factor material to the determination of disability**

A claimant who otherwise meets the definition of disability under the Social Security Act is not eligible to receive disability benefits if drug addiction or alcoholism is a "contributing factor material to the determination of disability." 20 C.F.R. §§ 404.1535(a), 416.935(a). If the Commissioner finds that the claimant is disabled and has medical evidence of the claimant's drug addiction or alcoholism, the Commissioner must determine if the claimant would still be disabled if he or she stopped using drugs or alcohol. 20 C.F.R. §§ 404.1535(b), 416.935(b); Parra v. Astrue, 481 F.3d 742, 747 (9th Cir. 2007), cert. denied, 128 S.Ct. 1068. If a claimant would still be disabled if he or she stopped using drugs or alcohol,

the claimant's drug or alcohol addiction is not a contributing factor material to the determination of disability, and benefits may be awarded. 20 C.F.R. §§ 404.1535(b), 416.935(b).

A two-step analysis is required to determine whether substance abuse is a material contributing factor. The ALJ first must determine which of the claimant's disabling limitations would remain if the claimant stopped using drugs or alcohol, and then must determine whether the remaining limitations would be disabling. If the remaining limitations are disabling, then the claimant's drug addiction or alcoholism is not a material factor to the determination of disability. 20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2); Parra, 481 F.3d at 747.

The claimant bears the burden of proving that drug or alcohol addiction is not a contributing factor material the disability determination, by showing that he or she would remain disabled if the substance abuse ceased. Parra, 481 F.3d at 748. Where the evidence of materiality is inconclusive, the claimant's burden of proof is not satisfied. Parra, 481 F.3d at 749-750 (rejecting the argument that a finding of materiality is precluded unless the medical evidence affirmatively shows that a disability will resolve with abstinence). To hold otherwise would give an addicted claimant "no incentive to stop" abusing drugs or alcohol, "because abstinence may resolve his disabling limitations and cause his claim to be rejected or his benefits terminated." Parra, 481 F.3d at 750.

**Dr. Puell's opinion**

Plaintiff contends that the ALJ adequately failed to consider Dr. Puell's statement that plaintiff takes medication that causes sedation, as well as Dr. Puell's assessment of plaintiff's physical and mental limitations. [See JS 3-11].

Where the opinion of a treating or examining physician is uncontroverted, the ALJ must provide clear and convincing reasons, supported by substantial evidence in the record, for

rejecting it. If contradicted by that of another doctor, a treating or examining source opinion may be rejected for specific and legitimate reasons that are based on substantial evidence in the record. Batson v. Comm'r of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); Tonapetyan v. Halter, 242 F.3d 1144, 1148-49 (9th Cir. 2001); Lester v. Chater, 81 F.3d 820, 830-831 (9th Cir. 1995). If a treating source opinion is conclusory and unsupported by clinical findings or objective data, the ALJ may reject it. See Batson, 359 F.3d at 1195 & n.3 (upholding the ALJ's rejection of an opinion that was "conclusionary in the form of a check-list" and lacked supporting clinical findings); Thomas, 278 F.3d at 957 ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.").

The chief defect in plaintiff's argument is that the ALJ did *not* reject Dr. Puell's disability opinion when considering the combined effects of plaintiff's alcoholism and her other severe impairments. Rather, the ALJ found that plaintiff was disabled when her alcoholism was taken into account. Only when attempting to disaggregate the effects of plaintiff's alcoholism did the ALJ reject the opinion of Dr. Puell, who made no distinction between plaintiff's functional abilities when she abused alcohol and when she did not.

Significantly, Dr. Puell did not acknowledge plaintiff's well-documented history of alcoholism in either his May 2006 or October 2006 assessments, a troubling omission given that the record demonstrates both that Dr. Puell knew about plaintiff's alcohol abuse and that her alcoholism was ongoing when Dr. Puell completed his 2006 assessments. The record shows, for example, that on December 9, 2005, a few months before Dr. Puell assessed plaintiff's physical capacity, plaintiff was brought by police to a CCHS clinic emergency department for evaluation pursuant to California Welfare and Institutions Code section 5150 and was diagnosed with acute alcohol intoxication. [AR 470-473]. Three days later, Dr. Puell completed a CCHS pre-operative history and physical examination report in preparation for

right eye surgery that plaintiff was scheduled to undergo. In that report he described plaintiff as positive for alcohol abuse ("ETOH abuse +"). [AR 372].

In February 2006, plaintiff presented to a CCHS emergency department with complaints of vomiting with traces of blood. She told the admitting physician, "I've been drinking nonstop all of my life," and she said that her last drink was a few hours earlier. [AR 450]. Plaintiff was treated, stabilized, and discharged with a diagnosis of alcoholic gastritis, improved, and instructions to "get into a rehab program to get off alcohol." [AR 450]. In March 2006, Dr. Puell saw plaintiff for a sinus infection and included "history of alcohol abuse" in his diagnoses. [AR 369].

In September 2006, plaintiff was treated at a CCHS emergency department for abdominal pain with vomiting and bleeding from her eye socket. [AR 435-448]. She was instructed to "limit alcohol, consider detox." [AR 436]. On January 4, 2007, and again on January 13, 2007, plaintiff was detained by police pursuant to California Welfare and Institutions Code section 5150 and treated on an emergency basis for acute alcohol intoxication. After the second emergency visit, plaintiff remained hospitalized for five days for treatment of alcohol withdrawal. [AR 407-434]. Plaintiff reported that she had been sober for "some months" but had started drinking again on Christmas. She said that she could drink a liter of whiskey or vodka a day. [AR 408]. It was noted that she had a past history of seizures from alcohol withdrawal. [AR 424]. Plaintiff's discharge instructions included a recommendation that she follow up with a substance abuse program, but the record does not indicate that she did do. [AR 424].

During the March 2008 administrative hearing, Dr. Wells, the psychological expert, asked plaintiff when she last drank alcohol. Plaintiff testified that "[i]t's been a couple of years." [AR 780]. When Dr. Wells replied that people who stopped drinking "usually remember pretty clearly a stopping point," plaintiff said that she had stopped attending

Alcoholics Anonymous meetings when she moved to southern California two years earlier, and that she had not attended any support groups since that time. She testified, "I just quit." [AR 780]. Dr. Wells responded that based on plaintiff's history, he had trouble accepting that, adding, "You're telling us you have not had anything to drink in two years?" [AR 780]. Plaintiff responded, "Yeah, it's been like two years. Like maybe on a weekend, but nothing like --- ." [AR 780]. Dr. Wells then said, "But you were always a binge drinker. That was your problem, wasn't it?" [AR 780]. Plaintiff replied, "Yeah. In the past, yes." [AR 780]. Dr. Wells testified that he had difficulty accepting plaintiff's testimony that she was able to "just quit" drinking two years earlier, and he opined that alcoholism was a contributing factor material to plaintiff's disability. [AR 784].

Dr. Puell opined that plaintiff was totally disabled without any indication that he attempted to exclude from consideration functional deficits related to her ongoing alcohol abuse. The ALJ, on the other hand, reasonably concluded that based on plaintiff's history, inconsistencies in her testimony, the medical evidence, and the medical experts' testimony, plaintiff would not have severe mental functional limitations absent alcohol or drug use, and therefore plaintiff's alcoholism was a contributing factor material to her disability since her alleged onset date. [AR 18-19].

The factors cited by the ALJ also supported his assessment of Dr. Puell's opinion. First, the ALJ gave less weight to Dr. Puell's functional assessment because it consisted of a check-off form. Although Dr. Puell added some brief comments, he did not provide objective or clinical findings that adequately explained or supported his disability opinion. For example, Dr. Puell said that "LBP" (lower back pain) supported the lifting and carrying restrictions he imposed, but he did not cite clinical or examination findings corroborating plaintiff's subjective complaints of back pain. He said that plaintiff had "chronic depression"

1  and was not able to get organized or motivated, but he did not provide mental status
2  examination findings indicating mental functional deficits.

3  In addition, the ALJ observed that Dr. Puell's opinion was not supported by his
4  treatment notes. [AR 17-18, 362-364]. The record contains almost no treatment notes from
5  him. There is a March 2006 treatment note indicating that Dr. Puell saw plaintiff for a sinus
6  infection, and the preoperative report Dr. Puell completed in December 2005 for plaintiff's
7  scheduled eye surgery. [See AR 369, 372-373, 389-392]. Those reports, however, do not
8  provide examination or clinical findings that substantiate Dr. Puell's restrictive functional
9  assessments in May 2006 and October 2006. Plaintiff faults the ALJ for failing to consider
10 Dr. Puell's October 2006 statement that plaintiff "takes meds cause [sic] sedation – side
11 effects." [AR 363]. Dr. Puell did not identify the medication(s) in question or name any of
12 plaintiff's medications. The ALJ permissibly disregarded Dr. Puell's statement as unsupported
13 by his treatment notes, which are silent as to sedation or other side effects of plaintiff's
14 medication. Accordingly, the ALJ did not err in giving Dr. Puell's disability opinion little
15 weight. See Connett v. Barnhart, 340 F.3d 871, 874-875 (9th Cir. 2003) (holding that the ALJ
16 did not err in rejecting the controverted opinion of a treating physician whose restrictive
17 functional assessment was not supported by his treatment notes).

18 Additionally, as the ALJ noted, Dr. Puell's disability opinion conflicts with that of Dr.
19 Wells, who opined that plaintiff did not have a severe mental impairment independent of her
20 alcohol abuse. [AR 19]. See Tonapetyan, 242 F.3d at 1149 (holding that the ALJ permissibly
21 rejected a treating physician's opinion partly because it was unsupported by his treatment
22 notes and was contradicted by the contrary opinion of a non-examining physician).

23 The ALJ credited Dr. Puell's opinion to the extent that the ALJ found plaintiff disabled
24 by alcoholism and her other severe impairments. The ALJ did not err in rejecting Dr. Puell's
25 opinion that plaintiff was disabled absent alcohol abuse.

**Hypothetical question**

Plaintiff contends that the ALJ's hypothetical question to the vocational expert was inadequate because it omitted reference to any sedative side effects from her medications, contrary to the assertion by Dr. Puell. [See JS 12-14].

Hypothetical questions posed to the vocational expert must accurately describe all of the limitations and restrictions of claimant that are supported by the record. Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999); Matthews v. Shalala, 10 F.3d 678, 681 (9th Cir. 1993). The ALJ is "free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence." Osenbrock v. Apfel, 240 F.3d 1157, 1164-1165 (9th Cir. 2001).

For the reasons explained above, the ALJ did not err in disregarding Dr. Puell's opinion, and thus the ALJ was not obliged to mention the side effect of sedation when posing his hypothetical questions to the vocational expert. See Osenbrock 240 F.3d at 1164-1165 (holding that the ALJ was free to pose a hypothetical question that failed to include the claimant's alleged impairment because they were not supported by substantial evidence in the record).

**Conclusion**

The Commissioner's decision is supported by substantial evidence and is free of legal error. Accordingly, the Commissioner's decision is **affirmed**.

**IT IS SO ORDERED.**

August 3, 2009

ANDREW J. WISTRICH
United States Magistrate Judge